*In re* GAIPA

Docket No. 188514. Submitted June 20, 1996, at Grand Rapids. Decided
September 24, 1996, at 9:05 A.M.

Milissa M. Gaipa gave up her parental rights to Brianna M. Gaipa and
filed a petition in the Kent County Probate Court, alleging that Ken-
neth Johnson fathered the child and seeking the termination of his
parental rights to the child under MCL 710.39(1); MSA
27.3178(555.39)(1) to make the child available for adoption. The
court, Nanaruth H. Carpenter, J., determined that the respondent
had provided support or care for the petitioner during pregnancy
within the meaning of MCL 710.39(2); MSA 27.3178(555.39)(2) by
contributing money toward the petitioner's rent and groceries and
letting her use his automobile during the first four months of preg-
nancy. Consequently, the court ruled that termination of the
respondent's parental rights has to be pursuant to MCL 710.51(6);
MSA 27.3178(555.51)(6) or MCL 712A.2; MSA 27.3178(598.2), as
required by MCL 710.39(2); MSA 27.3178(555.39)(2). The petitioner
appealed by leave granted.

The Court of Appeals *held*:

The test to be applied in determining whether a putative father
has provided support or care for the mother during pregnancy is
whether the putative father provided reasonable support or care
under the circumstances of the particular case. Factors to be con-
sidered include the father's ability to provide support or care, the
needs of the mother, the kind of support or care provided, the
duration of the support, whether the mother impeded the father's
efforts to provide her with support, and any other factors that may
be significant under the facts of the case. Here, remand is required
for reconsideration of whether the respondent provided reasonable
support or care for the petitioner during her pregnancy.

Reversed and remanded.

J. M. BATZER, J., dissenting, stated that the correct rule to be
applied in determining whether a putative father has provided sup-
port or care for the mother during pregnancy was established in *In
re Barlow*, 404 Mich 216 (1978), and that, in this case, the support
or care provided by the respondent to the petitioner met the *Bar-
low* test.

ADOPTION — TERMINATION OF PARENTAL RIGHTS — PUTATIVE FATHERS — SUP-
    PORT OR CARE DURING PREGNANCY.

> In determining whether a putative father has provided support or care
> for the mother during pregnancy such that the parental rights of
> the father may not be terminated pursuant to MCL 710.39(1);
> MSA 27.3178(555.39)(1) and may be terminated pursuant to
> MCL 710.51(6); MSA 27.3178(555.51)(6) or MCL 712A.2; MSA
> 27.3178(598.2) only, a probate court must decide whether the sup-
> port or care provided was reasonable under the circumstances; fac-
> tors to be considered by the probate court include the father's abil-
> ity to provide support or care, the needs of the mother, the kind of
> support or care provided, the duration of the support, whether the
> mother impeded the father's efforts to provide her with support,
> and any other factors that may be significant under the facts of the
> case.

*Oosterhouse, Kravitz & Witte* (by *Norman K. Kravitz* and *Donald F. Oosterhouse*), for the petitioner.

*Kristan A. Newhouse*, for the respondent.

Before: MACKENZIE, P.J., and MARKEY and J. M. BATZER,* JJ.

MACKENZIE, P.J. Petitioner, the biological mother of minor Brianna Marie Gaipa, appeals by leave granted from a probate court order finding that respondent putative father comes within the provisions of § 39(2) of the Adoption Code, MCL 410.39(2); MSA 27.3178(555.39)(2), because he provided support or care for the mother during pregnancy. We vacate the order and remand the case.

Petitioner became aware that she was pregnant in mid-May 1994. It is undisputed that respondent is the child's father. Petitioner soon moved in with respondent and his mother at his mother's house. According to petitioner, she began receiving general assistance

---

* Circuit judge, sitting on the Court of Appeals by assignment.

payments in June; respondent did not provide her with money for rent, food, or medical costs. Respondent became unemployed in July or August. Petitioner indicated that, at roughly the same time, she and respondent moved into the home of one of respondent's friends with the arrangement that petitioner would give the friend all her food stamps and pay half the rent. Petitioner testified that she left the relationship in October 1994 because respondent physically abused her. From that time forward, respondent sent her no assistance, and petitioner lived in a series of domestic violence shelters.

Respondent testified that he paid rent to his mother and purchased groceries and that once he and petitioner moved to his friend's house, he paid rent and bought groceries during the period he was employed. Respondent further indicated that he took petitioner to restaurants, drove her to appointments, and provided her with the use of his automobile.

Petitioner elected to release her parental rights to the child and to have the child adopted. Consequently, shortly after Brianna's birth on February 2, 1995, petitioner petitioned the probate court for a hearing to identify respondent as Brianna's father and to terminate his parental rights pursuant to § 39 of the Adoption Code. That statute, MCL 710.39; MSA 27.3178(555.39), provides in pertinent part:

> (1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the

child to grant custody to the putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial relationship with the child *or has provided support or care for the mother during pregnancy* or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of [the Adoption Code] or section 2 of chapter XIIA [the neglect provisions of the juvenile code]. [Emphasis added.]

In *In re Barlow*, 404 Mich 216, 229; 273 NW2d 35 (1978), the Court described the operation and significance of these provisions as follows:

Section 39 of the code creates two categories of putative fathers and provides different standards for termination of the rights of each. Putative fathers who have established no custodial relationship with the child, and who have provided no support for the mother or child prior to the notice of hearing, may have their parental rights terminated if the court finds, after examining the father's fitness and ability to properly care for the child, "that it would not be in the best interests of the child to grant custody" to him. The parental rights of the second group, those who have established some kind of custodial or support relationship prior to the notice of hearing, are subject to termination only by proceedings under the general jurisdictional provisions of chapter 12A of the Probate Code.

At issue in this case is whether respondent falls within the first group of putative fathers—a father with no established custodial or support relationship and whose rights may be terminated under § 39(1) upon a finding that it would not be in the child's best interest to be placed in his custody—or whether he instead falls within *Barlow*'s second group of putative fathers, that is, a father who has an established rela-

tionship and whose rights may be terminated only under the neglect provisions of the Juvenile Code pursuant to § 39(2).

The probate court found that respondent fell into the second category. In reaching this conclusion, the court first recognized an ambiguity in the requirement of § 39(2) that the putative father "provided support or care for the mother during pregnancy." Specifically, the court noted that the statute "does not elaborate on the definition of support or care, nor does it state a quantitative level of support or care that must be provided." The court then determined that the appropriate approach was to construe the statute as requiring "some contribution" to the mother's support or care. On the basis of this standard, the court concluded that because respondent made some contribution to petitioner's rent and groceries and let her use his car during the first four months of her pregnancy, the requirements of § 39(2) were satisfied.

On appeal, petitioner contends that the probate court erred in interpreting § 39(2) as requiring a putative father to provide the mother with merely "some" or "any" support at some point during her pregnancy. We agree.

Because the quantum of "support or care for the mother during pregnancy" necessary for a putative father to come within the provisions of § 39(2) is unclear, judicial construction is appropriate. See *Dep't of Social Services v Brewer*, 180 Mich App 82, 84; 446 NW2d 593 (1989), and compare *In re Schnell*, 214 Mich App 304; 543 NW2d 11 (1995). The court must use common sense and apply a reasonable construction that best accomplishes the statute's purpose. See *Marquis v Hartford Accident & Indemnity*

*(After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Furthermore, the statute should be construed so as to avoid unreasonable consequences. *ACCO Industries, Inc v Dep't of Treasury*, 134 Mich App 316, 321; 350 NW2d 874 (1984).

As indicated by the Supreme Court in *Barlow, supra*, the group of putative fathers that comes within the provisions of § 39(2) do so because they have established some sort of custodial or support relationship with the child or mother. It seems clear that, in demanding such an established relationship, the Legislature must have intended more than an incidental, fleeting, or inconsequential offer of support or care and therefore must have intended more than "any" contribution by the putative father. Conversely, the Legislature's failure to require "substantial" or total support during the pregnancy—especially where other sections of the Adoption Code specifically contain such a "regular and substantial support" requirement, see, e.g., MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a)—strongly suggests that the Legislature also did not intend that elevated standard to be applied in all cases and under all circumstances. See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993).

We are of the opinion that, by declining to require a certain and specific level of support or care for § 39(2) to apply, the Legislature rejected the notion of uniformly quantifying the adequacy of a putative father's support for the mother during pregnancy. Rather, it seems apparent that the Legislature intended that the courts determine case by case whether the father provided the kind of support and

the amount of support that is reasonable under the circumstances of each particular case.

As the phrase is used in § 39(2), "support or care," without more, cannot rationally mean all support or care for the mother during pregnancy, nor can it mean any support no matter how inconsequential. We therefore hold that the test to be applied in determining whether a putative father "has provided support or care for the mother during pregnancy" is whether the father provided reasonable support or care under the circumstances of the case. In determining whether the father has provided reasonable support or care under the circumstances, the court should consider such factors as the father's ability to provide support or care, the needs of the mother, the kind of support or care provided, the duration of the support, whether the mother impeded the father's efforts to provide her with support, and any other factors that might be significant under the facts of the case. This approach best promotes the Adoption Code's dual purposes of promoting speedy adoptions and protecting the rights of putative fathers. *Barlow, supra.*

Because the probate court has not determined whether respondent provided reasonable support or care for petitioner during her pregnancy, we vacate the court's order finding that respondent falls within the requirements of § 39(2) and remand the matter for reconsideration.

Vacated and remanded. The probate court shall hold a hearing in this matter within twenty-eight days of the release of this opinion. We retain no further jurisdiction.

MARKEY, J., concurred.

J. M. BATZER, J. *(dissenting)*. Respectfully, I dissent. The correct rule to be applied in this case is found in *In re Barlow*, 404 Mich 216, 229; 273 NW2d 35 (1978), and is quoted by the majority. After its brief genuflection to our Supreme Court's authoritative construction of the statute controlling this case, however, the majority fails to adhere to *Barlow*. The majority instead fashions its own construction of the statute—one that obviously is more to its liking than the words given us by the Legislature and our Supreme Court. I believe that such a departure from the clear dictates of *Barlow* is unwarranted and will result in jurisprudential confusion, standing, as it does, in contravention of *Barlow*.

The probate court heard the evidence and made findings of fact. It found that the respondent made "some contribution" to "rental for [the mother's] residence" during a portion of her pregnancy. The probate court further found that "[respondent] made some contribution to the purchase of groceries and meals at restaurants for Ms. Gaipa, and he also provided the use of his automobile for her personal use as well as travel to prenatal clinic visits and other matters." The record supports the probate court's findings. The probate court then applied *Barlow* and found that the actions of respondent constituted "some support" sufficient to satisfy the statute under *Barlow*. I agree with the probate court and see no need to vacate and remand for proceedings under an analysis and test that is without warrant in the statute as authoritatively construed by our Supreme Court.

While I would agree that not everything of de minimus economic benefit that one in respondent's situation might do for the expectant mother of his child

constitutes support, plainly those acts relied on by the probate court in its decision were support; that is, they were acts by the respondent that helped furnish the expectant mother a source or means of living or sustenance. Nothing more is required to put respondent into the category of parents who have established "some kind of custodial or support relationship prior to the notice of hearing." *Barlow, supra* at 229. Accordingly, respondent father's parental rights "are subject to termination only by proceedings under the general jurisdictional provisions of chapter 12A of the Probate Code." *Id.*

I would affirm.